**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ANDREW G. HACKETT, ) | CASE NO. 1:12-cv-00737 |
| ) | |
| Petitioner, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MAGGIE BRADSHAW, Warden ) | |
| ) | |
| Respondent. ) | **REPORT AND RECOMMENDATION** |
| ) | |

Petitioner, Andrew G. Hackett ("Hackett"), challenges the constitutionality of his sentence in the case of *State v. Hackett*, Cuyahoga County Court of Common Pleas Case No. CR-01-410750.  Hackett, *pro se*, filed a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on March 27, 2012.[1]  On August 3, 2012, Warden Maggie Bradshaw ("Respondent") filed her Answer/Return of Writ.  (ECF No. 8.)  Hackett filed a Traverse on September 24, 2012. (ECF No. 11.)  Respondent filed a reply on October 9, 2012.  (ECF No. 12.)  For reasons set forth in detail below, it is recommended that Hackett's petition be DISMISSED as time barred.

**I. Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. §

---

[1] Hackett is now represented by attorneys from the Office of the Federal Public Defender.

2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Hackett's conviction and sentence as follows:

> [*P2]  Hackett first argues that the court should have merged the sentences on all of the gun specifications into a single, three-year term, rather than break them up into two groups relating to the attempted aggravated murder counts and the remaining counts of the indictment.
>
> [*P3]  During sentencing, the court learned from the victims that Hackett and his accomplices entered a bank, pistol-whipped the bank manager and held seven customers at gunpoint while they robbed the bank.  When Hackett and his accomplices left the bank, police officers confronted him and the accomplices.  Hackett and his accomplices opened fire against the police officers as they tried to flee the scene.  The court stated that it found "the course of conduct in the bank separate as a course of conduct from what happened with the officers."
>
> [*P4]  R.C. 2929.14(D)(1)(b) prohibits imposition of prison terms for more than one firearm specification for felonies that are committed as part of the "same act or transaction."  Same act or transaction means a series of continuous acts bound together by time, space and purpose, and directed toward a single objective. *State v. Wills*, 69 Ohio St. 3d 690, 1994 Ohio 417, 635 N.E.2d 370.
>
> [*P5]  The court did not err by finding that two separate courses of conduct occurred that would justify a refusal to merge the gun specifications.  The use of guns to terrorize bank customers and employees during the commission of the bank robbery is directed at a different purpose than using the guns to fire on officers in an attempt to escape after the completion of the robbery.  Although the events described above took less than five minutes to transpire, the short period of time alone is not dispositive of the issue.  The appearance of the police constituted an intervening factor from the actual robbery itself, thus prompting a new series of actions designed to permit a getaway.
>
> 1. II
>
> [*P6]  Hackett next argues that the court failed to make the required findings for imposing consecutive sentences because it failed to consider whether the sentences were proportionate with sentences imposed on other offenders.
>
> [*P7]  When imposing consecutive prison sentences, the court must make findings that consecutive sentences are necessary to protect the public from future crime or to punish the offender, that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the

offender poses to the public, and that either the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct or that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. R.C. 2929.14(E)(4). Moreover, the court must state [**5] its reasons for making these findings. See R.C. 2929.19(B)(2)(c).

[*P8] The court found that Hackett posed "a risk to the community," that consecutive sentences were justified based on "those two courses of conduct," and that it needed to "protect the public in the future." Standing alone, these findings are only marginally in compliance with the court's statutory mandate, and that is simply because we recognize that the court has no duty to use "magic words" when imposing consecutive sentences. But when we consider that the court did not set forth any reasons for making those findings, we believe the findings become marginalized beyond our ability to affirm them. The better course is to remand the sentence so that the court can make more explicit findings, and give specific reasons for those findings.

1. III

[*P9] Finally, Hackett argues that the court failed to make a finding that his sentences were consistent with those of other offenders, including those of his accomplices. Hackett points out that he aided the federal authorities in prosecuting his accomplices, yet some of them received shorter sentences than he did.

[*P10] R.C. 2929.11(B) requires the court to impose a sentence for a felony that is reasonably calculated to protect the public and punish the offender, yet be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." The concept of proportionality described in R.C. 2929.11(B) is meant to encourage consistency in sentencing, yet not tie the hands of the sentencing judge when circumstances warrant flexibility. Indeed, the Ohio Sentencing Commission expressly rejected:

[*P11] "(a) purely indeterminate sentences, which can foster rehabilitation and encourage good behavior, but provide no certainty for the victim or offender; (b) purely determinate sentences, which can provide for certainty, but no opportunity to control behavior after release from prison and provides little motivation for good prison behavior; (c) a federal-style matrix grid, which can provide certainty, but may shift sentencing discretion from the judges to prosecutors and parole officers; and (d) Ohio's former mixture of indeterminate, determinate, and mandatory approach, which is confusing and complicated."

[*P12]  See Comment: Ohio's New Sentencing Guidelines: a "Middleground" Approach to Crack Sentencing (1996), 29 Akron.L.Rev. 607, 634, fn.150.

[*P13] The use of the term "consistent" in R.C. 2929.11(B) is not meant to convey that all sentences for a particular offense be equal to that in other cases - had that been the case, Ohio would not have rejected the use of the grid approach employed by the federal courts.  At the risk of putting too fine a point on the matter, consistency is meant to forbid a life sentence to the hungry offender who steals a loaf of bread with which to feed a starving family.

[*P14]  None of these concerns for proportionality are present in this case. Hackett participated in armed bank robbery which resulted in a shootout with the police.  That his accomplices might have received slightly lighter sentences in the federal court system is of no moment.  The court correctly noted that it was not bound by the federal sentencing guidelines.  And its refusal to consider those ancillary sentences did not amount to proof that it failed to consider whether Hackett received a sentence in proportion to his accomplices.  Given the facts and circumstances outlined during sentencing, we cannot say that the court meted out a sentence out of proportion to the crime.

[*P15]  Judgment affirmed in part, reversed in part and remanded for resentencing.

*State v. Hackett*, 2004-Ohio-5386, 2004 Ohio App. LEXIS 4924 (Ohio Ct. App., Oct. 7, 2004).

## II. Procedural History

### A. Conviction

On July 26, 2001, a Cuyahoga County Grand Jury charged Hackett with four counts of attempted aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2923.02/2903.01, one count of aggravated robbery in violation of O.R.C. § 2911.01, one count of felonious assault in violation of O.R.C. § 2903.11, and eight counts of kidnapping in violation of O.R.C. § 2905.01.  (ECF No. 8-2, Exh. 2.)  All counts carried one and three year firearm specifications. *Id*.

On February 22, 2002, Hackett, represented by counsel, pled guilty to two counts of

attempted aggravated murder as contained in Counts One and Two, aggravated robbery as contained in Count Five, felonious assault as contained in Count Six, and one count of kidnapping as contained in Count Nine. (ECF No. 8, Exhs. 3 & 5.) The remaining counts were nolled. *Id*. The plea included the firearm specifications for each count. *Id*.

On July 12, 2002, the trial court sentenced Hackett as follows:

> The Court imposes a prison term at Lorain Correctional Institution of 3 years on the firearm specifications in Counts 1 and 2 (merged for sentencing) to be served prior to and consecutive with time on base charges in Counts 1 and 2 of 5 years, counts to run concurrent with each other and 3 years on the firearm specifications in counts 5, 6, and 9 (merged for sentencing) to be served prior to and consecutive with time on base charges in counts 5, 6, and 9 of 5 years, counts to run concurrent with each other; the firearm specifications and base charges in Counts 1 and 2 to run consecutive to firearm specifications and base charges in counts 5, 6, and 9 for a total of 16 years. Defendant statutorily ineligible for shock incarceration program.
>
> Defendant to receive full credit for time served, sheriff to calculate. Post release control is a part of this prison sentence for the maximum period allowed for the above felony (s) under R. C. 2967.28.

(ECF No. 8-4, Exh. 4.)

**B.   Delayed Direct Appeal**

On November 19, 2003, Hackett, *pro se*, filed a Notice of Appeal with the Court of Appeals for the Eight Appellate District ("state appellate court") and a Motion for Delayed Appeal. (ECF No 8, Exhs. 6 & 7.) The state appellate court granted Hackett's motion to file a delayed appeal. (ECF No. 8-8, Exh. 8.)

On March 25, 2004, the state appellate court dismissed the appeal for failure to file a brief. (ECF No. 8-9, Exh. 9.) The next day, Hackett, with the assistance of counsel, filed a Motion for Reconsideration, which was granted. (ECF No. 8, Exhs. 10 & 11.)

On May 21, 2004, Hackett, through counsel, filed an appellate brief raising the following assignments of error:

1. The trial court erred in concluding that the underlying event was not a single course of conduct and when it failed to merge the gun specifications found in counts one and two with the specifications contained in counts five, six, and nine.

2. The trial court erred when it ordered consecutive sentences without furnishing the necessary findings and reasons required by R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2).

3. The trial court failed to make a finding that the Defendant's sentence is consistent with similarly situated offenders.

4. The trial court erred when it failed to consider the sentences of Mr. Hackett's co-offenders before imposing Mr. Hackett's sentence.

(ECF No. 8-12, Exh. 12.)

On October 7, 2004, the state appellate court affirmed in part and reversed in part, remanding the matter for resentencing because the trial court did not make statutorily required findings when imposing consecutive sentences.

On November 30, 2004, Hackett, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio.[2] (ECF No. 8-16, Exh. 16.) On March 2, 2005, the appeal was dismissed as not involving any substantial constitutional question. (ECF No. 8-18, Exh. 18.)

**C. "Resentencing" and Appeal**

On March 20, 2007 – two years after his appeal to the Supreme Court of Ohio was

---

[2] On the same date Hackett signed his Notice of Appeal, he was ordered to be transported to the trial court for resentencing pursuant to the state appellate court's mandate. (ECF No. 8-3 at 5.) After being informed of Hackett's appeal to the Supreme Court of Ohio, the trial court ordered that Hackett be returned to prison while his appeal was pending. *Id*.

dismissed – the trial court issued a journal entry stating as follows: "Court returns Defendant to the institution for the balance of his sentence; the remand, ordered in 2004, was pre-*Foster*;[3] the C/A remand would require this court to violate the current law regarding sentencing, and therefore, the Court returns the defendant to the institution to serve the balance of the previously imposed sentence."[4] (ECF No. 8, Exhs. 19 & 20.) It is undisputed that this journal entry was not generated after a formal "resentencing hearing." (ECF No. 11 at 8; ECF No. 12 at 2-3.) In fact, Hackett was not present at any hearing, and the record does not reflect that he was appointed counsel.[5] (*Id*.; ECF No. 8-3, Exh. 3.) The parties dispute whether a "resentencing" actually occurred. *Id*.

On August 20, 2008 – approximately seventeen months later – Hackett filed a *pro so* Notice of Appeal and Motion for Leave to file a delayed appeal with the state appellate court. (ECF No.

---

[3] On February 26, 2006, the Supreme Court of Ohio issued its decision in *State v. Foster*, 109 Ohio St. 3d 1, 2006 Ohio 856, 845 N.E.2d 470 (Ohio 2006). The *Foster* court found that O.R.C. § 2929.41, which had required that sentences be imposed concurrently absent certain judicial findings of fact as delineated in O.R.C. § 2929.14(E)(4), was unconstitutional under *Blakely v. Washington*, 542 U.S. 296 (2004) due to the judicial fact-findings necessary to impose consecutive sentences. 109 Ohio St.3d at 28-30. In addition, the *Foster* court severed the statutory presumption in favor of concurrent sentences and concluded that trial courts had full discretion to impose any sentence within the statutory range without having to offer any reasons or findings of fact. *Id*. at 31.

[4] A pending petition for a Writ of Mandamus requesting that the trial judge be compelled to resentence him was denied by the state appellate court as moot in light of a "a journal entry received for filing on February 27, 2007 in Case No. CR-410750 in which respondent ordered Hackett returned to Cuyahoga County Jail for resentencing." *State ex rel. Hackett v. Russo*, 2007-Ohio-2235, 2007 Ohio App. LEXIS 2091 (Ohio Ct. App., May 4, 2007).

[5] Hackett's Motion for a Delayed Appeal refers to an attorney that appears to have been representing him, but the docket does not indicate counsel was appointed. (ECF No. 8, Exhs.3 & 21.)

8-20, Exh. 20 & 21.) Hackett indicated that his attorney told him that the trial court refused to bring him into the courtroom for resentencing; and, that counsel could not do anything about the trial court's failure to follow the state appellate court's mandate. (ECF No. 8-21, Exh. 21.) Hackett also asserts that it took him six months before he received a copy of the trial court's journal entry despite repeated requests. *Id.* He raised the following lone assignment of error: "The trial court abused its discretion when refusing to resentence appellant after the court of appeals reversed and remanded his case back to the trial court for resentencing in violation of appellants [sic] Fourteenth Amendment rights to Due Process under the United States Constitution and Article I Section 10 of the Ohio Constitution." *Id*.

On September 10, 2008, the state appellate court denied the motion for leave and dismissed the appeal *sua sponte*. (ECF No. 8-22, Exh. 22.) Hackett did not file an appeal to the Ohio Supreme Court.

### D. Other Filings

On November 15, 2011, Hackett, through counsel, filed a petition for a writ of habeas corpus with the Supreme Court of Ohio. (ECF No. 8-23, Exh. 23.) On January 18, 2012, the petition was dismissed *sua sponte*. (ECF No. 8-24, Exh. 24.)

### E. Federal Habeas Petition

On March 27, 2012, Hackett filed a Petition for Writ of Habeas Corpus asserting one ground for relief:

> GROUND ONE: Andre G. Hackett is unlawfully restrained of his liberty by the Warden of the Richland Correctional Institution, without any legal authority, but under the color of a pretended commitment.
>
> Supporting facts: The Petitioner has never been resentenced as ordered by the

> Eighth District Court of Appeals on or about October 7th 2004. Indeed, the Petitioner was returned for resentencing. However, the trial Judge never conducted a resentencing hearing with the Petitioner present; instead, the trial Judge issued an order on March 20, 2007 (SEE Attached order)

(ECF No. 1.)

## II. Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).

**A. One-Year Limitation**

The AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)." *Evans v. Chavis*, 546 U.S. 189, 191 (2006); *Carey v. Saffold*, 536 U.S. 214 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003). "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Id.*[6]

Only "properly filed" applications for postconviction relief or collateral review toll the statute of limitations, and "a state postconviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 128 S. Ct. 2, 3 (2007); *Pace v. DiGuglielmo,* 544 U.S. 408, 125 S.Ct. 1807 (2005) ("time limits, no matter their form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely")*; Monroe v. Jackson*, 2009 WL 73905, *2, Case No. 2:08cv1168 (S.D. Ohio Jan. 8, 2009). A timely filed state post-conviction matter, however, cannot serve to toll a statute of limitations which has already expired before the motion was filed. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no

---

[6] An application for state habeas review is an application for state post-conviction review or other collateral review within the meaning of the AEDPA. *See Abela v. Martin*, 348 F.3d 164, 170 (6th Cir. 2003), *overruled on other grounds as stated in Sanders v. Bobby*, 2008 U.S. Dist. LEXIS 7248 (N.D. Ohio 2008).

longer serve to avoid a statute of limitations." *Vroman*, 346 F.3d at 602 (citation omitted). Further, if a state court ultimately denies a petition as untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling. *See Monroe* at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007).

Hackett argues that, because the trial court failed to conduct a proper resentencing hearing as mandated by the state appellate court, his sentence is void ab initio, and, therefore, the habeas clock has simply never started. (ECF No. 11 at 19.) Hackett cites no law in support of this position. In *Frazier v. Moore*, 252 Fed. App'x. 1 (6th Cir. 2007), the Sixth Circuit Court of Appeals rejected a similar argument. The *Frazier* court found that even if a state court judgment was defective, "that does not lead to the conclusion that there was no judgment for the purpose of [AEDPA]'s one year statute of limitations. Many of the petitions cognizable on federal habeas review challenge the validity of the underlying state court judgment. The fact that the state court judgment may have been procured in violation of state or federal law does not, however, render the judgment null under § 2244(d) [of the AEDPA]." *Id*. at 5-6 ("Furthermore, the validity of a judgment as a matter of state law is for the state to determine."); *accord Justice v. Crews*, 2012 U.S. Dist. LEXIS 58455 (E.D. Ky. Apr. 10, 2012). As noted by the *Frazier* court, "[i]f a judgment that was procured by a procedure that violated federal constitutional rights were sufficient to render a petitioner not in custody 'pursuant to the judgment of a state court' for the purpose of §§ 2244(d) and 2254, then the habeas regime embodied in these provisions would be substantially undermined."

Nonetheless, there is a legitimate question as to when the applicable limitations period actually began to run. Because Hackett is challenging the trial court's failure to resentence him

pursuant to the state appellate court's mandate and not the original conviction itself, the statute of limitations did not begin to run until thirty days after his conviction became final. Pursuant to 28 U.S.C. § 2244(d)(1)(D), the statute of limitations may commence later than the date when a petitioner's conviction became final if "the factual predicate of the claim or claims presented" was not discovered by a petitioner, acting with due diligence, until a later date.

The factual predicate of Hackett's claim – that the trial court improperly ignored the state appellate court's order for resentencing and that he was not provided counsel during the "resentencing" – may have become known to Hackett on March 20, 2007, the date of the disputed resentencing. In Hackett's subsequent motion for delayed appeal, his counsel told him that the trial court "refused to bring [him] in the courtroom and resentence him pursuant to the Court of Appeals decision and order." (ECF No. 8-21, Exh. 21 at 2.) However, it is not entirely clear if this information was delivered to Hackett contemporaneously. Hackett further claims that he did not receive a copy of the March 20, 2007 journal entry at that time; that he requested a copy of the journal entry several times upon his return to prison; and, that he received a copy approximately six months later. *Id*. Giving Hackett every benefit of the doubt, the Court finds that the factual predicate of his claim became known to him no later than October 19, 2007 – approximately six months after the journal entry was issued.[7] Although Hackett would receive the benefit of statutory tolling while his notice of appeal was pending between August 13, 2008 until September 10, 2008, the statute of limitations expired on November 17, 2008. Almost three more years elapsed until

---

[7] Although technically Hackett asserts that he did not receive a copy of the journal entry until *over* six months later, crediting him an extra few days, weeks, or even months would not render his petition timely. While Hackett argues that the delay in resentencing was oppressive (ECF No. 11 at 15), he certainly cannot argue that he was unaware of the delay by the time of his March 20, 2007 "resentencing."

Hackett's next state court filing on November 15, 2011. This state habeas application had no tolling effect on the statute of limitations because it had already expired. Respondent contends that the factual predicate of Hackett's claim became known to him when he failed to appeal to the Ohio Supreme Court within 45 days after the state appellate court denied his motion for leave to file a delayed appeal, October 27, 2008. (ECF No. 8 at 9.) Although Respondent may have simply been attempting to give every conceivable benefit of the doubt in choosing this later date, it cannot reasonably be argued that Hackett was unaware of the factual predicate of his claim – that the trial court improperly ignored the state appellate court's remand order for resentencing – until *after* he filed an appeal challenging the same. Nevertheless, even if the Court were to find the statute of limitations commenced on October 27, 2008, the time to file a habeas petition would have expired on October 27, 2009.

Therefore, unless equitable tolling is appropriate, Hackett's petition should be dismissed as time-barred.

**B.    Equitable Tolling**

Finally, the Court finds that equitable tolling is not appropriate. Hackett did raise a tolling argument in his Traverse. *See, e.g., Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (holding that a petitioner bears the burden of proving that equitable tolling is applicable). In order to be entitled to equitable tolling, Hackett must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.*; *see also Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). A court should be "much less forgiving . . . where the claimant failed to exercise due diligence in preserving his legal rights." *Vroman*, 346 F.3d at 605, *quoting Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *accord Jurado v. Burt*, 337 F.3d 638,

642 (6th Cir. 2003); *Garrison v. Warren Corr. Inst.*, 1999 U.S. App. LEXIS 13314 (6th Cir. Jun. 10, 1999).

Hackett avers that he acted diligently, but was proceeding without the benefit of counsel. (ECF No. 11 at 19-21.) Nonetheless, approximately two years and ten months elapsed between the denial of Hackett's appeal from his "resentencing" and his next court filing. Over three years elapsed before he filed the instant petition. In *Thomas v. Romanowski*, 362 Fed. Appx. 452, 455 (6th Cir. 2010), the Sixth Circuit declined to give the benefit of equitable tolling where more than three years elapsed between the dismissal of a petitioner's first habeas petition, which was withdrawn, and the filing of a subsequent petition. Despite petitioner's *pro se* status, the *Thomas* court noted that "[a]lthough it took Thomas roughly four months to return to state court ... the assorted other delays for which Thomas must take responsibility add up to well more than a year. That Thomas navigated an admittedly complicated and changing area of law alone, without the help of counsel, does not change our conclusion." *Id*. (*citing Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (remarking that "even a pro se litigant ... is required to follow the law" in denying a plaintiff equitable tolling). The Sixth Circuit concluded that "[i]t is difficult to say 'extraordinary circumstances' blocked Thomas from meeting the deadline when so much of the delay was attributable to his actions and to his actions alone."

In the case at bar, the Court has not counted against Hackett any of the delay up to the time of his "resentencing" or the six months that it took him to obtain a copy of the trial court's journal entry. Even after these events, Hackett waited over three years after his last appeal was dismissed to file a habeas petition. He has not argued that he was ignorant of the filing deadlines, nor would such an argument necessarily excuse his untimeliness. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th

Cir. 1991) ("ignorance of the law alone is not sufficient to warrant equitable tolling."); *accord Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *Allen v. Bell*, 250 Fed. Appx. 713, 716 (6th Cir. 2007); *Thomas*, 362 Fed. Appx. at 455. Furthermore, assuming *arguendo* that Hackett acted diligently in an attempt to secure his resentencing, his long delays in taking any action after his last unsuccessful appeal cannot be construed as diligent. Though Hackett may have been frustrated, "[t]he exercise of reasonable diligence is an ongoing process." *United States v. Denny*, 2012 U.S. App. LEXIS 20020 at *11 (10th Cir. Sept. 24, 2012). Furthermore, Hackett's *pro se* status alone is insufficient to excuse his untimeliness as most habeas petitioners are without counsel. To find otherwise would result in equitable tolling becoming the norm rather than the exception.[8] As such, the Court cannot find that Hackett was diligent or that any "extraordinary circumstance" prevented him from meeting the filing requirements.

Without the benefit of equitable tolling, the instant petition is untimely and should be dismissed.

**C.  Actual Innocence**

In *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005), it was held that "equitable tolling of the one-year limitations period based on a credible showing of actual innocence is appropriate." 395

---

[8] "Given that the vast majority of prisoners could, like [petitioner] does before us, allege ignorance of the law until an illuminating conversation with an attorney or fellow prisoner, [petitioner's] alternative construction—that legal norms constitute 'facts' for [statute of limitations] purposes—would in effect write the statute of limitations out . . ., rendering it a nullity. This we will not do." *Chattams v. Rossi*, 2012 U.S. Dist. LEXIS 132188 at **19-20 (S.D. Ohio, Sept. 17, 2012) (*quoting U.S. v. Pollard*, 416 F.3d 48, 55, 367 U.S. App. D.C. 386 (D.C. Cir. 2005); *cf. Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (rejecting the 28 U.S.C. § 2254 habeas petitioner's argument that the statute of limitations begins to run 'when a prisoner actually understands what legal theories are available').

F.3d at 599 (following *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1998)). "A petitioner may claim actual innocence for the purposes of equitable tolling, even if his conviction was the result of a plea." *Connolly v. Howes*, 304 Fed. Appx. 412, 417 (6th Cir. 2008) (*citing Bousley*, 523 U.S. at 623; *Waucaush v. United States*, 380 F.3d 251, 258 (6th Cir. 2004) (finding petitioner actually innocent of charge to which he pled guilty). Although Hackett argues that there has been a fundamental miscarriage of justice (ECF No. 11 at 25), he fails to raise a credible actual innocence claim.

### III. Conclusion

For the foregoing reasons, it is recommended that this matter be DISMISSED as time barred.

/s/ *Greg White*
U.S. Magistrate Judge

Date: December 4, 2012

**OBJECTIONS**
Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).